IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| HANNAH RYU and ELLA BOERS, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COTTON ON USA, INC.,<br><br>Defendant. | Case No. 2:25-cv-02459-LK<br><br>**DEFENDANT COTTON ON USA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: March 9, 2026<br><br>**ORAL ARGUMENT REQUESTED** |

REPLY MEMORANDUM OF LAW
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................................1

ARGUMENT ......................................................................................................................................2

I.    Plaintiffs' Opposition Confirms That *Their Claims* Are Expressly Preempted by CAN-SPAM ..........................................................................................................2

    a.    Plaintiffs Cannot Overcome Their Failure to Plead Materiality .............................3

    b.    Plaintiffs Cannot Overcome Their Failure to Plead That They Suffered Harm Based on Traditional Tort Principles ..........................................................6

II.   Plaintiffs' Opposition Failed to Justify Their Inability to State a Claim Under CEMA With Particularity ...............................................................................................7

    a.    Plaintiffs Do Not Dispute That They Cannot State a Claim for Emails They Did Not Receive ...........................................................................................8

    b.    Plaintiffs Point to No Allegations Evincing That Any Emails They Received Had Materially False or Misleading Information in the Subject Line ......................................................................................................................9

    c.    Plaintiffs' Bare Speculation That Cotton On Knew or Had Reason to Know That They Resided in Washington Is Insufficient ......................................11

III.  Plaintiffs' Derivative CPA Claim Fails As A Matter of Law ...........................................12

CONCLUSION ..................................................................................................................................12

REPLY MEMORANDUM OF LAW - i
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

**SEBRIS BUSTO JAMES**
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

**INTRODUCTION**

In an Opposition ("Opp.") so broad and generalized that it could apply to any one of the more than 100 boilerplate CEMA[1] complaints that have overwhelmed Washington state and federal courts in recent months, Plaintiffs grasp at straws in an attempt to state a claim. In doing so, Plaintiffs all but admit that they: (a) consented to receive Cotton On emails; (b) never provided Cotton On any indicia of their residence; (c) received the agreed-upon marketing emails containing distinct limited-time promotions; and (d) never read or were misled by any emails. But beyond making apparent that they are using a well-intentioned—but recently misused—anti-spam statute to seek windfall statutory damages, the Opposition does nothing to justify how Plaintiffs' Complaint can survive a motion to dismiss.

*First*, Plaintiffs' claims are preempted by CAN-SPAM. Plaintiffs largely ignore the specific arguments levied against their Complaint and instead dedicate the bulk of their Opposition to a facial preemption argument appearing nowhere in the Motion. Even to the extent the Opposition touches on the Motion's as-applied preemption arguments, it hardly rebuts them. Indeed, Plaintiffs nowhere dispute that materiality is an element of their CEMA claim, which they did not plead, nor do they address Cotton On's cited appellate authority finding similar "timing" claims to be immaterial, conceding both issues. That should end the inquiry. Even if the Court proceeds, however, Plaintiffs' admitted consent to receive the challenged emails makes it impossible for them to recover under CEMA, which arises in tort and is therefore bound by Washington common-law principles. Thus, irrespective of any facial challenges brought by other defendants in other cases, Plaintiffs' specific claims here are preempted by CAN-SPAM and should be dismissed.

*Second*, Plaintiffs cannot state a claim under Rule 8(a) or 9(b). In the Motion, Cotton On individually examined each of the three challenged emails actually before the Court at this stage, explaining that Plaintiffs' own allegations as to each of them establish that Plaintiffs' so-called

---

[1]    Terms not otherwise defined herein shall have the same definition as used in the Motion ("Mot.").

REPLY MEMORANDUM OF LAW - 1
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

"false end dates" were in fact separate promotions covering separate products and separate platforms. Plaintiffs offer no rebuttal to these specific arguments, instead offering the same high-level conclusions of deceptiveness permeating their Complaint.  To the extent Plaintiffs believe that the Court "must" accept their legal conclusions of deceptiveness, they are mistaken.  So too are Plaintiffs mistaken for their continued effort to argue that Cotton On had knowledge of their residence.  Outside of speculation and conspiracy theories for how Cotton On "could be" using third-party software to reverse-engineer location from IP addresses, Plaintiffs point to no *facts* alleged anywhere to support their theories.  Nor can Plaintiffs explain how such an extreme regulation could be squared with CEMA's position in regards to CAN-SPAM preemption.

At bottom, Plaintiffs' Opposition asks the Court to look past the Complaint's paltry factual allegations and instead focus on its many baseless speculations and legal conclusions.  But Plaintiffs' dramatic rhetoric to the contrary, the actual facts of the Complaint cannot survive CAN-SPAM preemption, *Twombly/Iqbal*, or Rule 9(b).  The Complaint should be dismissed.

## ARGUMENT

**I.    Plaintiffs' Opposition Confirms That *Their Claims* Are Expressly Preempted by CAN-SPAM**

In the Motion, Cotton On explained that because state anti-spam statutes exist within the contours of CAN-SPAM, Plaintiffs' claims are constrained by CAN-SPAM's preemption clause and cannot rely on more burdensome regulations than it requires.  (Mot. at 6–7.)  Unlike other federal statutes that serve as a floor, CAN-SPAM acts as a ceiling for state anti-spam acts, only permitting a claim to survive preemption if it arises under "traditional tort theories such as claims arising from fraud or deception."  *Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1063 (9th Cir. 2009).  Given this framework, while the Complaint may bring a cause of action under CEMA generally, Plaintiffs still must plead adequate facts to survive preemption.  *Id.* at 1061–62; *see also Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353 (4th Cir. 2006) ("Whatever the precise scope of the Oklahoma [anti-spam] provision might be, we cannot agree that Mummagraphics' action for immaterial errors survives preemption.").

REPLY MEMORANDUM OF LAW - 2
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

Plaintiffs fail to address this argument directly, instead tackling the straw-man argument that "laws like the section of CEMA at issue here" are *facially* preempted. (*See* Opp. at 6.) In contrast to the decisions Plaintiffs cite, Cotton On nowhere raised this argument, and Plaintiffs cited no instances of it being raised.[2] On the contrary, rather than challenging the statute writ large, Cotton On specifically pointed to cases analyzing as-applied preemption challenges and explained that given Congress's stated intent and the plain language of CAN-SPAM, Plaintiffs must allege that the alleged misrepresentations are "materially misleading" and that they suffered a traditional tort-based harm. (Mot. at 7–10.) In response, not only did Plaintiffs fail to address the Motion's cited caselaw, but Plaintiffs struggled to point to *any* allegations that satisfied either requirement. There are none. As such, Plaintiffs' attempt to take advantage of litigation trends and seek expansive statutory damages under CEMA based on the consensual receipt of emails containing immaterial statements cannot survive preemption.

### a.      Plaintiffs Cannot Overcome Their Failure to Plead Materiality

Among other pleading failures, Plaintiffs fail to allege that the emails contained any material misrepresentations. In the Motion, Cotton On explained that even at the pleading stage, an anti-spam complaint must still allege that the alleged misrepresentations "were material to any purchasing decision." (Mot. at 7.) In Opposition, Plaintiffs nowhere dispute that materiality is an essential element of their CEMA claim. (*See* Opp. at 8–9.) Nor did Plaintiffs point to any specific allegations in their Complaint suggesting that the start of a separate promotion after the conclusion of the first goes to the "very essence and substance" of the transaction—or in Plaintiffs' case, the lack thereof. Instead of making any effort to justify their failure to plead materiality, Plaintiffs offer a number of excuses for why they need not do so. None have merit.

---

[2] For this reason, Plaintiffs' request that the Court take judicial notice of the Washington Attorney Generals' briefs in other cases lacks merit. Each of the cited briefs addressed facial challenges under preemption and the Dormant Commerce Clause, neither of which were raised in the Motion. As such, the only position those briefs support is that the Washington Attorney General believes the state's statute is constitutional on its face. That position is irrelevant to whether the Complaint pled facts sufficient to survive preemption and state a claim under CEMA. And even if "the existence" of a brief is judicially noticeable, Plaintiffs' own authority recognized that the "veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

REPLY MEMORANDUM OF LAW - 3
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

First, in an effort to absolve themselves of meeting their pleading burden, Plaintiffs assert that preemption is actually an "affirmative defense" that they did not to need to plead around to state a claim. (Opp. at 9.) Outside of two inapposite cases that do not even mention the word "preemption," however, Plaintiffs point to no authority supporting their position. (*Id.*) Nor could they, as the Ninth Circuit has already recognized that a plaintiff must allege "sufficient factual allegations to show that the state-law claims" can survive express preemption to state a claim. (Mot. at 6 (quoting *Weaver v. Ethicon, Inc.*, 737 F. App'x 315, 317 (9th Cir. 2018)).) To that end, Plaintiffs ignore the pleading-stage cases finding that CAN-SPAM requires them to plausibly "demonstrate that the [subject line] violates the state statute and contains *material* misrepresentations." (*Id.* at 7 (quoting *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1048–49 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018)); *see also Asis Internet Servs. v. Member Source Media, LLC*, No. 3:08-cv-01321, 2010 WL 1610066, at *4 (N.D. Cal. Apr. 20, 2010) ("In *Gordon,* the Ninth Circuit clearly held that falsity and deception as used in the CAN–SPAM preemption provision require that a misrepresentation be material.").) It is Plaintiffs who have their pleading burden backwards, not Cotton On or the Ninth Circuit.

And it is apparent from Plaintiffs' Opposition that they cannot meet that burden. As Plaintiffs' own cited caselaw shows, materiality distinguishes "everyday misstatements from actionable fraud" by looking "to the effect on the likely or actual behavior *of the recipient* of the alleged misrepresentation." *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (emphasis added). Here, despite arguing that they "are consumers susceptible to the deceptive strategies Cotton On employs," (Opp. at 8–9), Plaintiffs point to no allegations even *suggesting* that any marketing email had any actual "effect" on them: Plaintiffs failed to allege that they altered their behavior in any way based on any subject lines, that they were misled by any subject lines into taking any action, or that they even read the subject lines before filing suit. (Mot. at 8.) In that sense, Plaintiffs are correct that their "perspectives add little to the analysis the Supreme Court has said applies," (Opp. at 9), but only because they have no perspectives to add. Instead, Plaintiffs' Opposition confirms that the emails at issue had no material effect on them.

REPLY MEMORANDUM OF LAW - 4
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

SEBRIS BUSTO JAMES
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

To the extent that Plaintiffs argue that the lack of materiality as to their (non-existent) conduct is irrelevant because the subject lines may have been material to other, hypothetical consumers, that unpled argument too fails.  As discussed in the Motion and nowhere rebutted in the Opposition, materiality under Washington law requires that a misrepresentation "not only influences and affects the transactions, but also goes to its very essence and substance."  (Mot. at 8 (quoting DeWolf & Allen, 16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.).)  This requirement is "demanding" and "substantially narrows the universe of actionable misrepresentation."  *Kousisis*, 605 U.S. at 135.  Indeed, the Washington Court of Appeals held in *Brummett v. Washington's Lottery*, 288 P.3d 48 (Wash. Ct. App. 2012), that similar timing claims do not rise to that level.  (*See* Mot. at 8.)  Plaintiffs failed to address, let alone distinguish, *Brummett*, and their failure to point to allegations or caselaw disputing that statements about timing are immaterial "can be construed as conceding that the argument has merit."  *Leonard v. Recontrust Co., N.A.*, No. 3:15-cv-05866, 2016 WL 304802, at *6 (W.D. Wash. Jan. 26, 2016), *aff'd sub nom.*, *Bruce v. Recontrust Co., N.A.*, 719 F. App'x 713 (9th Cir. 2018).

Finally, in a last-ditch effort, Plaintiffs abandon their timing theory and argue that the subject lines implicitly contain "representations about prices."  (Opp. at 9.)  But this argument is a red herring, and Plaintiffs do not—and cannot—allege that Cotton On misrepresented the price of any promotion.  Indeed, even considering Plaintiffs' example of a "product cost[ing] $10 today and $20 tomorrow" (*id.*), Plaintiffs' theory of the case is *not* that these advertised prices are false or deceptive.  Rather, Plaintiffs' theory as pled is that after the first sale timely ends and the product reverts to $20, a different product on a different shopping platform might then go on sale for $10, somehow making the first sale's end date illusory.  Plaintiffs point to nothing about the price terms that is false or deceptive, let alone materially so, and Plaintiffs' changed focus on pricing confirms that the Complaint fails to plead materiality.

REPLY MEMORANDUM OF LAW - 5
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

b.    **Plaintiffs Cannot Overcome Their Failure to Plead That They Suffered Harm Based on Traditional Tort Principles**

Nor did Plaintiffs show that their claim arises out of traditional tort principles. While Plaintiffs argue that the Motion's "quarrel is with the statute that the Washington legislature wrote," Plaintiffs again neglect the impact that CAN-SPAM had on the statute. (Opp. at 10.) Because CAN-SPAM only excepts state anti-spam statutes based on traditional tort theories, each of the "'common law tort principles that are part of [Washington's] common law also apply to' CEMA." (Mot. at 9 (quoting *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718 (4th Cir. 2015).) Plaintiffs offer no actual rebuttal to *Beyond Systems*, which explained in detail why similarly manufactured anti-spam claims should be preempted as a matter of law. (*Id.* at 9–10.) Specifically, the Fourth Circuit held that because anti-spam claims arise in tort, the "general maxim of tort law" that a party cannot recover for a harm to which they consented governs, meaning that a plaintiff's "consent to—and indeed its solicitation of—the harm at issue in th[e] case prohibits" them from recovering statutory damages under state anti-spam laws based on the mere receipt of challenged emails. *Beyond Sys.*, 777 F.3d at 718.

Unable to meaningfully dispute that the same traditional tort principles preclude their claims, Plaintiffs attempt to chide Cotton On for citing *Leonard v. McMenamins, Inc.*, No. 2:22-cv-00094, 2024 WL 4188974 (W.D. Wash. Sept. 13, 2024), asserting that its facts are inapposite and claiming that "defense counsel apparently chose to cite it to needle rather than to offer any substantive argument." (Opp. at 10.) Aside from lacking any basis, this accusation is misplaced. This case is cited for its well-supported finding that, consistent with other state-tort schemes, Washington common-law tort claims require injury to recover. (Mot. at 9.) Plaintiffs even acknowledge this principle, arguing that "the injury is receiving the email that violates CEMA." (Opp. at 10 (quoting *Brown v. Old Navy, LLC*, 567 P.3d 38, 46 (Wash. 2025).) But, as Cotton On explained, recent courts in the wake of *Brown* have distinguished unwanted "spam" emails from those to which the plaintiff consented. (Mot. at 9-10 (citing *Montes v. Catalyst Brands LLC*, No. 2:25-cv-00281, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025)).)

REPLY MEMORANDUM OF LAW - 6
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

SEBRIS BUSTO JAMES
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

While attempting to distance themselves from this case, Plaintiffs' argument misses the mark. While *Montes* arose in a challenge to Article III Standing,[3] it does not change the fact that Plaintiffs concededly consented to the emails' receipt, nullifying their ability to recover in tort based on that alleged harm. (Mot. at 10.) Indeed, Plaintiffs do not (and cannot) dispute that CEMA arises in tort, that they consented to receive the challenged emails, or that their claim is bound by the common-law principle that a plaintiff "who effectively consents to conduct of another" cannot recover for the harm caused by that conduct. (*See id.* (quoting Restatement (Second) of Torts § 892A).) Because Washington common law "did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award," Plaintiffs' claim cannot fall within the narrow exception to CAN-SPAM preemption. *Gordon*, 575 F.3d at 1068–69 (Gould, J., concurring).

## II. Plaintiffs' Opposition Failed to Justify Their Inability to State a Claim Under CEMA With Particularity

In addition to failing to justify how the Complaint survives preemption, the Opposition also fails to explain how Plaintiffs stated a claim with particularity. Plaintiffs point to out-of-circuit caselaw attempting to evade their obligation to satisfy Rule 9(b), but they completely ignore the cases within the Ninth Circuit that have found that statutory claims "grounded in fraud" are enough to require pleading with particularity. (*See* Mot. at 5.) Indeed, while Plaintiffs distinguish their allegations from "a complex healthcare fraud matter," they elsewhere proclaim that the Complaint presents "a putative class action alleging a coordinated campaign and scheme to deceive consumers by a sophisticated commercial enterprise." (*Compare* Opp. at 4, *with id.* at 12.) By Plaintiffs' own admissions, the Complaint sounds in fraud under Rule 9(b).

---

[3] To be clear, while Cotton On challenges whether Plaintiffs' alleged injury can survive CAN-SPAM preemption based on the traditional tort principles imputed into CEMA, Cotton On does not challenge Plaintiffs' Article III Standing. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("[O]ur holding that [the plaintiffs] plead injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law [tort] claims."); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—without raising the constitutional pleading floor. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing.").

REPLY MEMORANDUM OF LAW - 7
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

**SEBRIS BUSTO JAMES**
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

In turn, Plaintiffs wholly misconstrue their burden under Rule 9(b), which requires them to allege with particularity the "who, what, where, when, and how" of the alleged misconduct. (Mot. at 5.) The Opposition pays only lip service to these heightened requirements, explaining "how" the statements are false or deceptive by repeating that the subject lines contain "false statements of fact as to the duration and availability of the promotions." (Opp. at 5.) This circular assertion illustrates the flaws in the Complaint and the Opposition—a party cannot justify the "how" of an alleged scheme by simply concluding that the statements are false. *See United States ex rel. Bashir v. Boeing Co.*, No. 2:19-cv-00600, 2023 WL 6377575, at *5 (W.D. Wash. Sept. 29, 2023) (King, J.) ("Conclusory allegations of fraud are therefore insufficient, as are broad allegations that include no particularized supporting detail." (cleaned up)). On the contrary, the Complaint must "explain what is false or misleading about the statement made and why it is false." *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (holding that statements under consumer protection laws failed to satisfy Rule 9(b) because "Plaintiffs failed adequately to allege why the representations were misleading").

In other words, "what is missing from this whodunnit" (*cf. Opp.* at 5) are the requisite particularized factual allegations supporting any of the Complaint's many conclusory statements. Despite Cotton On raising these pleading failures in the Motion, Plaintiffs *still* failed to point to any particular allegations supporting their theories, instead offering more high-level conclusions that, despite so claiming, do not address any of the arguments raised. That simply is not enough.

a.    **Plaintiffs Do Not Dispute That They Cannot State a Claim for Emails They Did Not Receive**

In the Motion, Cotton On pointed out the straightforward proposition that Plaintiffs, who allege only that they received three emails collectively between them, may not state a claim in their individual capacity for the other "examples" in their Complaint that they did not receive. Plaintiffs nowhere dispute that they cannot themselves recover based on these other emails, instead arguing that these are merely "examples" of fraud that putative class members may have received. (Opp. at 12–13.) Plaintiffs miss the point. "That absent class members may have claims under

[CEMA] is immaterial—only Plaintiff[s'] individual claims are presently before the Court." *Chavez v. Wal-Mart Stores, Inc.*, No. 2:13-cv-06429, 2014 WL 12591252, at *2 (C.D. Cal. June 2, 2014). In other words, even in a class action, a plaintiff cannot state a claim based on emails received by absent class members, so the only relevant emails at this stage of the case are the three that Plaintiffs allegedly received. *Cheng v. BMW of N. Am., LLC*, No. 2:12-cv-09262, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("[I]n ruling on a motion to dismiss a class action complaint prior to class certification, courts generally consider only the claims of the named plaintiff."). To the extent their attorneys identify other "example" emails that neither Plaintiff alleges to have received, those emails simply have no bearing on this Motion.

> **b.** **Plaintiffs Point to No Allegations Evincing That Any Emails They Received Had Materially False or Misleading Information in the Subject Line**

Plaintiffs' argument concerning the emails that Plaintiffs allegedly received fares no better. Rather than addressing the Motion's detailed analysis of the three subject lines at issue, Plaintiffs attempt to avoid their burden altogether by concluding that whether generally challenged statements in a complaint are true, false, or otherwise misleading is a fact issue that may only be "conclusively answered" after discovery. (Opp. at 13.) But despite arguments that Cotton On "is using the wrong standard on a Rule 12 motion," Plaintiffs' position would render the rule a nullity by making claims alleging deception immune to pleading-stage challenges. (*Id.*) That is absurd. Plaintiffs' cited authority does not support such a bright-line rule, nor does it comport with the body of Ninth Circuit authority upholding pleading-stage dismissals where the alleged deception is premised on implausible readings of objectively true statements. *See*, *e.g.*, *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 885 (9th Cir. 2021). Rather, a court may dismiss a complaint "at the motion to dismiss stage [where] a plaintiff's allegations that a reasonable consumer is likely to be deceived are implausible." *Pappas v. Chipotle Mexican Grill, Inc.*, No. 3:16-cv00612, 2016 WL 11703770, at *5 (S.D. Cal. Aug. 31, 2016).

REPLY MEMORANDUM OF LAW - 9
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

**SEBRIS BUSTO JAMES**
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

Here, Plaintiffs' explanation of how the three challenged emails are misleading is wholly implausible. Despite asserting that the Motion's analysis is "wrong on its face," Plaintiffs make no actual attempt to address its specific discussions of the emails or how the challenged promotions were distinct from one another. (Opp. at 14.) Nor could they. Far from being "weak sauce," as Plaintiffs colorfully assert (*id.* at 12), the Motion individually examined Plaintiffs' allegations for each of the three promotional emails at issue, explaining how, even after taking the Complaint as true, it was apparent to any reasonable consumer the subsequent sales were distinct and independent. (*See* Mot. at 12–13.) As explained, each of the subsequent promotions concerned different products or different shopping platforms than the former. (*Id.*) Plaintiffs do not address or attempt to analyze these individual subject lines whatsoever in their Opposition. Nor do they address the caselaw providing that a retailer offering "frequent sales of various items does not support an inference that those sales were fraudulent or deceptive." (*Id.* at 13 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014).)

And like in *Camasta*, while Plaintiffs restate their theory that the subsequent promotions are mere continuations of the first, the Opposition nowhere points to facts or cases supporting the notion that any two of the alleged promotions are identical. Plaintiffs, for instance, do not allege that a customer could use a promotional code after its end date, nor did Plaintiffs point to any instance of "a constant or perpetual sale of any particular merchandise." *Camasta*, 761 F.3d at 738. Indeed, as Plaintiffs freely admit, "[o]ffering similar promotions periodically may not violate CEMA." (Opp. at 14.) To justify their explanation that Cotton On is using separate promotions to create a false sense of urgency, however, "[P]laintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Without being able to point to *any* explanation, "Plaintiffs' alleged assumption is not just 'unreasonable' or 'fanciful.' It is implausible." *Moore*, 4 F.4th at 884.

To that end, the Washington legislature recently passed an amendment intended to rein in CEMA abuse both by requiring that the sender have actual or objectively inferred knowledge that

the subject line is false or misleading and by reducing statutory damages to $100 per email.  *See* ESHB 2274 (Wash. 2026).  As public testimony explained, these amendments were intended to address the "over 100 CEMA lawsuits" filed in response to *Brown v. Old Navy* that "rely[] on statutory damages untethered from allegations of actual harm."  Sen. Rep. ESHB 2274 (Wash. 2026).  It continued that *Brown*'s holding that "falsity of a commercial email is determined by the subject line, not the body of the email," is "not the legislative intent of CEMA."  *Id.*

> c.    **Plaintiffs' Bare Speculation That Cotton On Knew or Had Reason to Know That They Resided in Washington Is Insufficient**

Plaintiffs also fail to justify their lack of allegations concerning Cotton On's knowledge of their residence.  As discussed in the motion, Plaintiffs allege no facts that if taken as true establish knowledge, instead offering mere theories for how the company might become aware in the future.  (Mot. at 14.)  Indeed, Plaintiffs acknowledge this pleading defect, highlighting that the Complaint alleges ways that "Cotton On *could be* using other technologies" to learn customers' residences after signing up to receive emails.  (Opp. at 16 (emphasis added).)  Unfortunately for Plaintiffs, CEMA does not prohibit sending emails to a person who happened to live in Washington; CEMA requires that the "sender knows, or has reason to know," that the email address "is held by a Washington resident."  Wash. Rev. Code § 19.190.020(1).  While Plaintiffs try to skirt their pleading burden by arguing that they "need not prove their case" at this stage, their "real quarrel is with the statute that the Washington legislature wrote rather than the substance"—or lack thereof—of their allegations.  (*See* Opp. at 10, 17.)

Even after accepting all of Plaintiffs' allegations as true, the Complaint nowhere alleges that Cotton On knew or should have known they were Washington residents before sending any challenged emails.  Instead, after Plaintiffs seemingly abandoned the other five theories raised in the Complaint, the sole allegation on which Plaintiffs rely is that Salesforce operates as Cotton On's email marketing platform.  (*Id.* at 16.)  Plaintiffs' theory is that Salesforce can provide Cotton On a list of email addresses to whom emails were sent, from which "Cotton On is likely able to infer the general geographic location of recipients by state based on their IP address at the time of

REPLY MEMORANDUM OF LAW - 11
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

email open or link click." (Compl. ¶¶ 103–04.)  Even if this allegation is assumed to be true (it is not), Plaintiffs' theory lacks particularity, merit, and common sense.  For one, CEMA prohibits the *sending* of spam emails, and Plaintiffs' proposed method of ascertaining location necessarily takes place after the email is received and opened.  Nor could the IP address be used to reliably ascertain the citizenship of the recipient, particularly if a customer is traveling or using a VPN. (Mot. at 14.)  More fundamentally, however, Plaintiffs seek to impose a rule where an Australian retailer that does not itself collect US-state-level geolocation for email sign-ups must nonetheless obtain raw data *from third parties* and manually reverse-engineer customers' approximate locations before sending a single email.  Such a rule would overhaul existing regulations governing commercial email, running headlong into CAN-SPAM preemption and other constitutional issues.[4]  (*Id.*)  There is nothing in CEMA allowing for such an absurd result simply because Plaintiffs cannot meet their pleading burden.

### III.   Plaintiffs' Derivative CPA Claim Fails As A Matter of Law

The Parties agree that Plaintiffs' derivative CPA claim rises and falls with their CEMA claim.  (Mot. at 15; Opp. at 17.)  Thus, because Plaintiff's CEMA claim lacks merit, so too does their CPA claim.  *Gordon*, 575 F.3d at 1065–66.

### CONCLUSION

For the reasons set forth above and in its Motion to Dismiss, Defendant Cotton On USA, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint.

DATED this 9th day of March 2026.

SEBRIS BUSTO JAMES

s/ Jeffrey A. James
Jeffrey A. James, WSBA #18277
15375 SE 30th Place, Suite 310
Bellevue, Washington 98007

---

[4]   While Cotton On does not challenge CEMA under the Dormant Commerce Clause because there is no such requirement, Plaintiffs' position that retailers must preemptively calculate and store the geolocation of every individual to sign up for its emails to avoid CEMA liability would regulate matters well beyond Washington's borders and thus run afoul of that as well. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 337 (1989).

REPLY MEMORANDUM OF LAW - 12
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

SEBRIS BUSTO JAMES
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005

(425) 454-4233
jjames@sbj.law

KELLEY DRYE & WARREN LLP

Geoffrey W. Castello (*pro hac vice*)
Caitlin R. Hickey (*pro hac vice*)
Gregory T. Berman (*pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel.: (212) 808-7800
gcastello@kelleydrye.com
chickey@kelleydrye.com
gberman@kelleydrye.com

*Counsel for Defendant*

*The above counsel of record hereby certifies that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.*

REPLY MEMORANDUM OF LAW - 13
*Ryu v. Cotton On USA, Inc.*, No. 2:25-cv-02459-LK

SEBRIS BUSTO JAMES
15375 SE 30th Pl., STE 310
Bellevue, Washington 98007
Tel: (425) 454-4233 – Fax:(425) 453-9005